UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

YONG QIN LUO,

                Plaintiff,

-against-

STEVEN EUGENE MIKEL, JR. and
ST. MICHAEL MOTOR EXPRESS INC.,

                Defendants
----------------------------------------------------------------X

08-CV-2760 (ARR)

ORDER AND OPINION

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

ROSS, United States District Judge:

       Plaintiff Yong Qin Luo commenced this personal injury action in state court on June 16, 2008, alleging that defendant Steven Eugene Mikel, Jr. ("Mikel"), driving a vehicle with the consent of the vehicle's owner, defendant St. Michael Motor Express Inc. ("St. Michael"), negligently caused an accident on April 9, 2008, resulting in a serious injury to plaintiff, as defined by N.Y. Ins. Law § 5102(d), and damages to plaintiff's car. Defendants thereafter removed the case to federal court on the basis of diversity jurisdiction. Defendants have now filed a motion for summary judgment, arguing that there is no evidence that Mikel operated St. Michael's vehicle negligently, or that plaintiff suffered a serious injury as defined by New York law. For the reasons stated below, defendants' motion for summary judgment is granted.

**BACKGROUND**

The following facts are undisputed. The parties were involved in a motor vehicle collision on April 9, 2008, at approximately 9:00 p.m. Pl.'s R. 56.1 Stmt. ¶ 1. Plaintiff was driving a 2001 Nissan Maxima and Mikel was driving a Peterbilt truck at the time the accident occurred. Defs.' R. 56.1 Stmt. ¶¶ 3,4. Prior to the accident, both vehicles were stopped at a red light on Jay Street, waiting to turn left onto Sand Street. Id. ¶ 5. "Defendant did not see the plaintiff's vehicle before making the left turn or at any time prior to the impact." Id. ¶ 9. After police arrived at the scene of the accident, plaintiff refused medical care, and left the accident in a tow truck. Id. ¶¶ 10, 11. Plaintiff first sought medical treatment from Dr. K. Woung Park on April 16, 2008. Id. ¶ 13. Next, Dr. Ronald Krinick concluded that plaintiff required shoulder surgery. Id. ¶ 14. On June 10, 2008, plaintiff underwent right knee surgery at New York Downtown Hospital. Id. ¶ 15.

A. Plaintiff's Disputed Version of the Facts

Plaintiff argues that "Jay Street is either a three-lane road where the marking on the right-most lane have been worn off, or a two lane road with an extremely large right-hand lane." Pl.'s Mem. Of Law in Opp. To Summary Judgment at 2 (hereinafter "Pl.'s Opp."). At the red light, plaintiff contends that she was stopped "in front of, and to the right of, Defendant's tractor trailer." Pl.'s R. 56.1 Counter-Stmt. ¶ 3. After both parties completed the left turn onto Sand Street, plaintiff alleges that defendants' "tractor-trailer merged into her lane and struck the side of her vehicle" while she attempted to enter the on-ramp to the Brooklyn-Queens Expressway. Pl.'s Opp. at 1.

Plaintiff contends that the accident caused her serious injury, including a "torn labrum in her right shoulder, a torn meniscus in her right knee, and a stretched Anterior Cruciate

2

Ligament." Id. at 3. Physical therapy was prescribed for her shoulder, and Dr. Krinick "repaired the Meniscus using suturing, . . . the paterllar tendon using canaloplasty (repair using viscoelastic gel), and repaired the anterior cruciate ligament using thermal shrinkage." Id. Despite the physical therapy and corrective surgery, plaintiff still complains of pain and a decreased range of motion in her right shoulder and knee. Id. Indeed, she notes that Dr. Park, her treating physician, concluded that she is "permanently partially disabled, and suffers from a 10% reduced range of motion in her right shoulder, and a 20% reduced range of motion in her right knee." Id.

B. Defendants' Disputed Version of the Facts

Defendants maintain that Jay Street is a two-lane street marked with two left turning arrows. Defs.' R. 56.1 Stmt. ¶ 2. Just prior to the accident, defendants claim that Mikel and his vehicle were located in the far-right left turning lane, and that plaintiff's vehicle was "traveling on the paved shoulder." Defs.' R. 56.1 Stmt. ¶ 6. Mikel avers that he "checked his left side view mirror, waited for the vehicles in the left lane to pass his truck[]," but did not see plaintiff before he made the left turn onto Sand Street. Defs.' R. 56.1 Stmt. ¶ 7. "After defendant proceeded into the intersection, he felt an impact to the front right side of his truck." Defs.' R. 56.1 Stmt. ¶ 8. Only after the accident did Mikel notice plaintiff's car. Defs.' Mem. Of Law in Supp. Of Defs.' Steven Eugene Mikel, Jr., and St. Michael Motor Express Inc.'s Mot. For Summary Judgment, at 3 (hereinafter "Defs.' Mot.").

## DISCUSSION

I. Standard of Review for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

3

of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

Defendants have raised two questions in their summary judgment motion: (1) whether plaintiff has established a genuine issue of material fact as to liability; and (2) whether plaintiff has established a genuine issue as to whether she suffered a "serious injury" as defined in N.Y. Ins. Law § 5102(d). The court will address the serious injury claim first.

II.     Serious Injury

New York has a no-fault insurance scheme, which limits the causes of action available against insured motorists. Under the New York plan, losses are generally compensable only via insurance claims. A common law tort claim for non-economic injuries is available only when the plaintiff has suffered a "serious injury." See N.Y. Ins. Law § 5104(a). Serious injury is defined as a personal injury which results in:

(1)   "death;"
(2)   "dismemberment;"
(3)   "significant disfigurement;"
(4)   "a fracture"
(5)   "loss of a fetus"
(6)   "permanent loss of use of a body organ, member, function or system;"
(7)   "permanent consequential limitation of use of a body organ or member;"
(8)   "significant limitation of use of a body function or system;" or
(9)   "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

N.Y. Ins. Law § 5102(d). The court must determine as a threshold question "whether the evidence would warrant a jury finding that the injury falls within the class of injuries that, under no-fault, should be excluded from judicial remedy." Licari v. Elliott, 57 N.Y.2d 230, 238, 441 N.E.2d 1088, 1092, 455 N.Y.S.2d 570, 574 (1982).

To prevail on summary judgment in the serious injury context, the defendant must initially establish a prima facie case that the plaintiff did not sustain a serious injury within the

5

meaning of New York's No-Fault Insurance Law. Barth v. Harris, No. 00 Civ. 1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001). To meet this burden, the defendant may rely on unsworn reports by plaintiff's physicians, see McGovern v. Walls, 201 A.D.2d 628-29 (2d Dep't 1994), but reports by defendant's own retained physicians must be in the form of sworn affidavits or affirmations. See Marsh v. Wolfson, 186 A.D.2d 115, 115-16 (2d Dep't 1992); N.Y. C.P.L.R. 2106. Once the defendant has established a prima facie case that the plaintiff has not suffered a serious injury within the meaning of the statute, the burden shifts to the plaintiff to come forward with sufficient evidence to support his or her claim. Ebewo v. Martinez, 309 F.Supp.2d 600, 604 (S.D.N.Y. 2004) (citing Gaddy v. Eyler, 79 N.Y.2d 955 (1992)). Plaintiff must submit admissible evidence in the form of sworn affidavits or affirmations by physicians. Barth, 2001 WL 736802, at *2 (citing Bonsu v. Metro. Suburban Bus Auth., 202 A.D.2d 538 (2d Dep't 1994)).

The Court of Appeals has held that the statutory "serious injury" threshold requires objective proof of a plaintiff's injury; subjective complaints of pain alone will not suffice. Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d 345, 350 (2002); see also Son v. Lockwood, 2008 WL 5111287, at *5 (E.D.N.Y. Nov. 26, 2008) (noting that when evaluating a claim of permanent consequential limitation or significant limitation, New York law requires a "comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part"); Nasrallah v. Helio De, 1998 WL 152568, at *5 (S.D.N.Y. April 2, 1998) ("Nor can the plaintiff's subjective pain, standing alone without objective indicia, constitute a significant limitation."). Such proof may come in the form of: (1) "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion;" or (2) "[a]n expert's qualitative assessment of a plaintiff's condition . . ., provided that the evaluation has an objective

basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." Id. (emphasis in original); see also Diaz v. Edwards, 2009 WL 962223, N.Y. Slip Op. 50622 (1st Dep't 2009) (noting that the plaintiff must submit a "quantitative assessment of range of motion limitations based on objective testing" to defeat the defendant's summary judgment motion); Williams v. Elzy, 2003 WL 22208349, at *4 (S.D.N.Y. Sept. 23, 2003) ("Where, as here, a plaintiff is relying on expert opinion to give rise to an issue of fact as to the existence of a serious injury, the opinion must be supported by objective tests.").

Luo did not allege in her complaint that her injuries were serious under any particular clause of section 5102(d).[1] She argues in her opposition brief, however, that she has a "quantifiable reduced range of motion in her right knee." Pl.'s Counter-Stmt. ¶¶ 15, 16. Specifically, plaintiff contends that her treating physician concluded that she was "permanently partially disabled[,]" suffering a 10 percent reduced range of motion in her right shoulder and a 20 percent reduced range of motion in her right knee, despite the three-part corrective knee surgery Pl.'s Opp. at 7. Plaintiff has accompanying pain. Id. Indeed, plaintiff indicated that she cannot return to work because of her weakened shoulder, that she has difficulty climbing stairs,

---

[1] Plaintiff's serious injury can arguably fall only under one of the last three categories outlined in N.Y. Ins. Law § 5104(a): "(7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." While plaintiff did not specify within which category she seeks to subsume her serious injury claim, for summary judgment purposes, this deficiency is immaterial since the court concludes that plaintiff's medical evidence fails because it is not based on objective, admissible criteria.

and that she cannot sit for extended periods of time since the accident. See Defs.' Opp., Ex. E, Lou Dep. at 96, 98.

As a preliminary matter, defendants submitted affirmed medical evidence in support of their motion for summary judgment establishing a prima facie case that plaintiff had not sustained a serious injury within the meaning of section 5102(d). Having examined plaintiff and reviewed plaintiff's medical records compiled by Dr. Park and Dr. Krinick, defendants' expert, Dr. Edward Crane, opined that the "[r]ange of motion of both shoulders was complete, identical, and normal." Defs.' Opp., Ex. J, Letter from Dr. Edward Crane, at 2 (Feb. 11, 2009) (hereinafter "Crane Letter"). He also noted that plaintiff "had a subjective complaint of mild pain at the extreme of right shoulder forward elevation, abduction, and internal rotation." Id. Regarding plaintiff's right knee, Dr. Crane observed a range of motion "from 0° to 135° flexion, the left from 0° to 145°." Id. at 3. Finally, Dr. Crane found

> no objective evidence of any orthopedic residual in regards . . . [to her] shoulder. . . . At the right knee she may have a very minimal loss of terminal flexion. That would have no functional consequence. She has no evidence of internal derangement of the right knee or of an anterior cruciate ligament injury. There is evidence of mild chondromalacia, a condition commonly seen in asymptomatic people, particularly women.

Id. at 4. Dr. Rothman, another expert, arrived at similar conclusions. After he reviewed plaintiff's April 2008 Magnetic Resonance Imaging ("MRI") test of her right shoulder, Dr. Rothman concluded that her shoulder was "normal." Defs.' Opp., Ex. K, Letter from Dr. Lewis Rothman, at 1 (Feb. 9, 2009) (hereinafter "Rothman Letter").

Based on this evidence, defendants have established a prima facie case that Luo has not suffered a serious injury within the meaning of the statute. The burden therefore shifts to plaintiff to come forward with sufficient evidence to support his or her claim. See Ebewo, 309 at

604. As noted above, plaintiff may do so only by utilizing admissible evidence in the form of sworn affidavits or affirmations by physicians. Barth, 2001 WL 736802, at *2 (citation omitted).

Plaintiff has failed to sustain her burden. Plaintiff's claim of serious injury seems to rest entirely on Dr. Park's deposition testimony wherein he concluded that she suffers permanent loss of range of motion in her right shoulder and knee. Indeed, plaintiff asserts this conclusion repeatedly in her opposition. Yet, in the small excerpt from Dr. Park's deposition plaintiff submitted for this court to review, Dr. Park failed to explain how he reached these conclusions, or on what objective medical tests he relied in reaching these determinations. Indeed, aside from Dr. Park's sworn, conclusory testimony, plaintiff did not submit any sworn affirmations or medical reports to support or explain how or why Dr. Park reached this medical opinion quantifying plaintiff's loss of range of motion. Cf. Gex v. Limontas, 2006 WL 842404, at *4 (E.D.N.Y. March 29, 2006) (granting the defendants' summary judgment motion where the treating physician "did not describe the tests that he performed to arrive at [the quantitative reduction in range of motion assessment], nor explain how the range of motion deficits he [cited] correspond to any limitations of use or function of plaintiff's body").

Simply put, there is no objective, admissible evidence submitted by plaintiff in opposition to defendants' motion for summary judgment for this court to evaluate. As then district court Judge Sonia Sotomayor has noted, "a plaintiff's physician's conclusory statements as to significance or permanence, unsupported by facts detailing the extent of the limitation, is insufficient." Nasrallah, 1998 WL 152568, at *7 (collecting cases); Gex, 2006 WL 842404, at *4 ("Where, however, the plaintiff's evidence is limited to conclusory assertions by a treating physician that are tailored to meet statutory requirements, summary judgment should be granted for the defendant."). Moreover, plaintiff's own surgeon, Dr. Krinick, undermined plaintiff's

argument when he testified that post-surgery, she had "full strength" and "no instability." Pl.'s Opp., Ex. D at 26. Dr. Krinick's deposition testimony to which plaintiff cites in support of her contention that a triable issue of fact exists is inapposite since that testimony relates to plaintiff's condition pre-surgery. Id. at 19-22.

Plaintiff's citation to various cases within New York State and the Second Circuit do not alter this analysis. Plaintiff apparently suggests that a 10 percent reduction in range of motion in her right shoulder and 20 percent reduction in the range of motion in her right knee is per se evidence of serious injury under New York insurance law. See Pl.'s Opp. at 8. While plaintiff is correct that some courts have found that a 20% percent reduction in range of motion raises an issue of triable fact, thereby precluding summary judgment, plaintiff misunderstands the issue. The issue here is not whether plaintiff has satisfied some minimum, threshold quantitative reduction in range of motion establishing, as a matter of law, that a jury could find plaintiff's injuries the type that fall outside New York's no-fault insurance scheme. Rather, the issue is plaintiff's failure to rebut, with objective, admissible evidence, defendants' prima facie case that she has not suffered a serious injury within the meaning of New York law.

In any event, the cases cited by plaintiff do not stand for the position she advances. For example, plaintiff argues that based on Gutierrez v. Fox, "even without surgery or permanency, a mensicual tear can be considered a 'significant limitation' under the no fault law." Pl.'s Opp. at 8, citing Gutierrez v. Fox, 1997 WL 214867 (S.D.N.Y. April 25, 1997). Plaintiff's reliance on Gutierrez, however, is misplaced. In Gutierrez, the court was not presented with the issue of whether or not the plaintiff had submitted objective, admissible evidence to sustain his burden and defeat the defendant's motion for summary judgment. And the court certainly did not rule that a meniscul tear is a per se serious injury within the meaning of New York law. Rather, the

issue before the court was the plaintiff's dissatisfaction with his jury award and his subsequent motion for a new trial. Id. at *1. Presumably, any disagreement over whether or not plaintiff's injury was a serious injury as a matter of law was long decided before the Gutierrez court rendered the decision cited by plaintiff.

Similarly, in Shapurkin v. SSI Servs. FLQ, Inc., this court did not rule that the plaintiff's 20 percent reduction in range of motion alone was enough for the plaintiff to sustain his burden. 2005 WL 2002452, at * 9 (E.D.N.Y. Aug. 19, 2005). Rather, this court ruled that a 20 percent reduction in range of motion, when based on the treating physician's sworn, objective tests, including an MRI and various other medical assessments, was sufficient to raise a triable issue for the jury. Id. After a careful review of the case law, this court was unable to locate any case where a treating physician's quantitative conclusion, unsupported by admissible, objective medical assessments, was deemed sufficient by a court for a plaintiff to sustain his or her burden and defeat summary judgment.

Having reviewed the record as a whole, and taking the evidence in the light most favorable to plaintiff, the court finds that the dearth of sworn, objective medical evidence mandates this court to conclude that plaintiff has failed to satisfy her burden of proof regarding any of New York's statutory categories delineating serious injury. Because the court holds that plaintiff has failed to raise a genuine issue of fact concerning whether or not she suffered a serious injury, the court finds it unnecessary to address defendants' contention that they are entitled to summary judgment regarding liability.

## CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment is granted and the case is dismissed. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

                                             s/ ARR

                                      Allyne R. Ross
                                      United States District Judge

Dated: May 13, 2009
Brooklyn, New York